**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **JORGE NEWBERY** and **HOLLY RINGLING,** individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>**SAMSUNG ELECTRONICS AMERICA, INC.,**<br><br>    Defendant. | Case No.  1:22-cv-5325<br><br><br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiffs JORGE NEWBERY and HOLLY RINGLING ("Plaintiffs"), individually and on behalf of all others similarly situated, through their attorneys, bring this action against Defendant SAMSUNG ELECTRONICS AMERICA, INC ("Defendant" or "Samsung"), and allege upon personal knowledge as to their own actions and experiences, and upon investigation, information, and belief as to all other matters, as follows:

### INTRODUCTION

1.      This consumer data breach lawsuit arises out of Defendant's failure to implement and maintain adequate security and safeguards with respect to its collection and maintenance of highly sensitive and confidential personal information of its customers, including name, contact and demographic information, date of birth, and product registration information. Defendant's insufficient and unreasonable data security practices caused, facilitated, and exacerbated the data breach and its impact on Plaintiffs and Class members.

2.      Samsung is a leader in the global market for high-tech computers and electronics manufacturing and digital media.

3.      By Defendant's own admission, in late July 2022, an unauthorized third party acquired information from some of Samsung's U.S. systems (the "Data Breach"). According to Defendant, on or around August 4, 2022, Defendant determined through its ongoing investigation that personal information of its customers was affected. Although Defendant identified the incident as early as August 4, 2022, Defendant did not warn those most at risk—Plaintiffs and Class members, until September 2, 2022.

4.      The Data Breach exposed Plaintiffs' and Class members' personally identifiable information to criminals, including, but not limited to, name, contact and demographic information, date of birth, and product registration information ("PII").

5.      The PII that unauthorized persons accessed on Defendant's systems can be used by criminals alone, and in conjunction with other pieces of information, to perpetrate crimes against Plaintiffs and Class members that can result in significant liability and damage to their money, property, creditworthiness, reputation, and their ability to pay current loans, improve their credit, and/or obtain loans on favorable terms in the future.

6.      Plaintiffs and Class members entrusted Defendant with their sensitive PII. Defendant understands the importance of protecting such information. For example, on its website, Defendant states "How We Protect Personal Information" and explains "We maintain safeguards designed to protect personal information we obtain through the Services."[1]

7.      Defendant's representations concerning privacy practices and data security were false. Defendant does not state the date that it began investigating the incident, only that on or

---

[1] *See* https://www.samsung.com/us/account/privacy-policy/ (last visited Sept. 21, 2022).

around August 4, 2022, Defendant determined that its customers' information was acquired in the Data Breach that occurred in late July 2022. Criminals breached Defendant's inadequately defended systems, and accessed and acquired electronic files containing the PII of Plaintiffs and Class members. The criminals gained unauthorized access by thwarting, circumventing, and defeating Defendant's unreasonably deficient data security measures and protocols. Defendant did not start notifying Plaintiffs and other Class members of the Data Breach until on or around September 2, 2022.

8.     Plaintiffs, individually, and on behalf of all persons similarly situated, seek to be made whole for the losses incurred by Plaintiffs and other victims of the Data Breach, and the losses that will be incurred in the future. Plaintiffs also seek injunctive relief in the form of compliant data security practices, full disclosure regarding the disposition of the information in Defendant's systems, and monitoring and audits of Defendant's security practices going forward because Defendant continues to collect, maintain, and store Plaintiffs' and Class members' PII.

**PARTIES, JURISDICTION, AND VENUE**

9.     Plaintiff Jorge Newbery resides in Barrington, Illinois and is a citizen of Illinois.

10.    Plaintiff Holly Ringling resides in San Antonio, Texas and is a citizen of Texas.

11.    Defendant is a New York corporation with its principal place of business in Ridgefield Park, New Jersey.

12.    The Court has original jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because this is a Class action involving 100 or more Class members and the amount in controversy exceeds $5,000,000, exclusive of interest and costs. Many members of the Class, including Plaintiffs, are citizens of different states from Defendant.

13.     Venue is proper in this District under 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2), as a substantial part of the events giving rise to the claims emanated from activities within this District, and Defendant conducts substantial business in this District.

## GENERAL ALLEGATIONS

### *The Data Breach*

14.     On or about September 2, 2022, Defendants provided notice to Plaintiffs and Class members ("Data Breach Notice") via email and posted an "Important Notice Regarding Customer Information" on its website.[2] In the Data Breach Notice, Defendant states that in late July 2022, an unauthorized third party acquired information from some of Samsung's U.S. systems that contain the personal information of Plaintiffs and Class members. A true and correct copy of the Data Breach Notice sent to each Plaintiff is attached as Exhibit 1.

15.     The Data Breach Notice states that personal information pertaining to Plaintiffs and Class members was acquired by an unauthorized person in the Data Breach.

16.     Defendant states that Plaintiffs' and Class members' information acquired in the Data Breach includes customer name, contact and demographic information, date of birth, and product registration information. *See* Exhibit 1.

17.     Since discovering the Data Breach, Defendant states that "We have taken actions to secure the affected systems" and that "By working with industry - leading experts, we will further enhance the security of our systems - and your personal information." *See* Exhibit 1. These are actions that should have been employed in the first place and they would have prevented or limited the impact of the Data Breach.

---

[2] *See* https://www.samsung.com/us/support/securityresponsecenter/ (last visited Sept. 21, 2022).

18. Defendant does not state when the Data Breach was first detected. *See* <u>Exhibit 1</u>. Defendant states that on or around August 4, 2022, Defendant determined through its "ongoing investigation that personal information of certain customers was affected." *Id.* Defendant did not publicly announced the Data Breach or notify those whose PII was accessed by criminals in the Data Breach at that time.

19. On or around September 2, 2022—almost a month after learning that its customers' information was acquired by criminals in the Data Breach—Defendant sent Data Breach Notices to Plaintiffs and other persons whose PII was accessed by the criminals.

20. In the Data Breach Notice, Defendant provided information to Plaintiffs and Class members about additional steps they can take to help protect themselves. Defendant provided the contact information of the three credit bureaus that Plaintiffs and Class members could contact to obtain a credit report to help them detect possible misuse of PII. *See* <u>Exhibit 1</u>.

21. Additionally, Defendant provides FAQs on its website and recommends that Plaintiffs and Class members (a) remain cautious of any unsolicited communications that ask for your personal information or refer you to a web page asking for personal information; (b) avoid clicking on links or downloading attachments from suspicious emails; and (c) review your accounts for suspicious activity. [3]

22. As a result of the Data Breach, Plaintiffs and Class members have been and must continue to be vigilant and review their credit reports for incidents of identity theft or fraud, and educate themselves about security freezes, fraud alerts, and other steps to protect themselves against identity theft.

---

[3] *See* https://www.samsung.com/us/support/securityresponsecenter/ (last visited Sept. 21, 2022).

*Industry Standards for Data Security*

23.     Defendant is aware of the importance of safeguarding Plaintiffs' and Class members' PII, that by virtue of its business it places Plaintiffs' and Class members' PII at risk of being targeted by hackers.

24.     Defendant is aware that the PII that it collects, organizes, and stores, can be used by criminals to engage in crimes such as identity fraud and theft using Plaintiffs' and Class members' PII.

25.     Because of Defendant's failure to implement, maintain, and comply with necessary cybersecurity requirements, Defendant was unable to protect Plaintiffs' and Class members' information and confidentiality, and protect against obvious and readily foreseeable threats to information security and confidentiality. As a proximate result of such failures, criminals gained unauthorized access to Defendant's U.S. systems, and acquired Plaintiffs' and Class members' PII in the Data Breach without being stopped.

26.     Only after the attack was completed did Defendant begin to undertake basic steps recognized in the industry to protect Plaintiffs' and Class members' PII.

27.     Defendant was unable to prevent the Data Breach, and was unable to detect the unauthorized access to vast quantities of sensitive and protected files containing protected information of Plaintiffs and Class members. Discovery on Defendant, law enforcement investigators, and private investigators, will reveal more specific facts about Defendant's deficient and unreasonable security procedures.

28.     Security standards commonly accepted among businesses that store personal information using the Internet include, without limitation:

        a)     Maintaining a secure firewall configuration;

b)     Monitoring for suspicious or irregular traffic to servers;

c)     Monitoring for suspicious credentials used to access servers;

d)     Monitoring for suspicious or irregular activity by known users;

e)     Monitoring for suspicious or unknown users;

f)     Monitoring for suspicious or irregular server requests;

g)     Monitoring for server requests for personal information;

h)     Monitoring for server requests from VPNs; and

i)     Monitoring for server requests from Tor exit nodes.

29.     The U.S. Federal Trade Commission ("FTC") publishes guides for businesses for cybersecurity[4] and protection of personal information[5] which includes basic security standards applicable to all types of businesses.

30.     The FTC recommends that businesses:

a)     Identify all connections to the computers where you store sensitive information;

b)     Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks;

c)     Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business;

d)     Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine;

---

[4] *See* F.T.C., *Start with Security: A Guide for Business*, (June 2015), https://www.ftc.gov/business-guidance/resources/start-security-guide-business (*last accessed* Sept. 20, 2022).
[5] *See* F.T.C., *Protecting Personal Information: A Guide for Business*, (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (*last accessed* Sept. 20, 2022).

e)      Pay particular attention to the security of their web applications—the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hack attacks;

f)      Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet;

g)      Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls—settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically;

h)      Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day; and

i)      Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business' network, the transmission should be investigated to make sure it is authorized.

31.      The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer information, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.[6]

---

[6] F.T.C., *Privacy and Security Enforcement: Press Releases*, https://www.ftc.gov/news-events/media-resources/protecting-consumer-privacy/privacy-security-enforcement (*last accessed* Sept. 20, 2022).

32. Because Defendant was entrusted with consumers' PII, it had and has a duty to keep the PII secure.

33. Plaintiffs and Class members reasonably expect that when they provide their PII to a company, the company will safeguard their PII.

34. Despite Defendant's obligations, Defendant failed to upgrade and maintain its data security systems in a meaningful way so as to prevent the Data Breach.

35. Specifically, in breach of its duties, Defendant failed to:

   a) Replace email filtering tools, malware software, and Internet monitoring tools with more robust solutions that utilize artificial intelligence ("AI") to detect and block known and newly introduced malware;

   b) Block all inbound and outbound Internet, email, and network traffic to foreign countries;

   c) Maintain a secure firewall configuration;

   d) Monitor for suspicious or irregular traffic to servers;

   e) Monitor for suspicious credentials used to access servers;

   f) Monitor for suspicious or irregular activity by known users;

   g) Monitor for suspicious or unknown users;

   h) Monitor for suspicious or irregular server requests;

   i) Monitor for server requests for personal information;

   j) Monitor for server requests from VPNs;

   k) Monitor for server requests from Tor exit nodes;

   l) Identify all connections to the computers where Defendant stores sensitive information;

   m) Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks;

n)    Scan computers on Defendant's network to identify and profile the operating system and open network services, and disable services that are not needed to prevent hacks or other potential security problems;

o)    Pay particular attention to the security of Defendant's web applications—the software used to give information to visitors to its websites and to retrieve information from them;

p)    Use a firewall to protect Defendant's computers from hacker attacks while they are connected to a network, especially the Internet;

q)    Not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting its business;

r)    Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls—settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically;

s)    Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day; and

t)    Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business' network, the transmission should be investigated to make sure it is authorized.

36.    Had Defendant properly maintained its systems and adequately protected them, Defendant could have prevented the Data Breach.

### *Defendant Owed Duties to Plaintiffs and Class Members to Adequately Secure and Safeguard Their PII*

37.    Defendant is aware of the importance of security in maintaining personal information (particularly sensitive personal information), and the value consumers place on keeping their PII secure.

38.     Defendant owes duties to Plaintiffs and the Class members to maintain adequate security and safeguards to protect the confidentiality of their PII.

39.     Defendant owes a further duty to its customers to immediately and accurately notify them of a breach of its systems to protect them from identity theft and other misuse of their personal data and to take adequate measures to prevent further breaches.

### The Categories of PII at Issue Here Are Valuable to Criminals

40.     Businesses that solicit, aggregate, and store sensitive PII are likely to be targeted by cyber criminals.

41.     The FTC has released its updated publication on protecting PII for businesses, which includes instructions on protecting PII, properly disposing of PII, understanding network vulnerabilities, implementing policies to correct security problems, using intrusion detection programs, monitoring data traffic, and having in place a response plan.

42.     The FTC has, upon information and belief, brought enforcement actions against businesses for failing to protect PII. The FTC has done this by treating a failure to employ reasonable measures to protect against unauthorized access to PII as a violation of the FTC Act, 15 U.S.C. § 45.

43.     General policy reasons support such an approach. A person whose personal information has been compromised may not see any signs of identity theft for *years*. According to a U.S. Government Accountability Office report:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[7]

---

[7] *See* https://www.gao.gov/assets/gao-07-737.pdf at 29 (last visited Sept. 20, 2022).

44. Companies recognize that PII is a valuable asset. Indeed, PII is a valuable commodity. A "cyber black-market" exists in which criminals openly post PII on a number of Internet websites. Plaintiffs' and Class members' personal data that was stolen has a high value on both legitimate and black markets.

45. At an FTC public workshop in 2001, then-Commissioner Orson Swindle described the value of a consumer's personal information as follows:

> The use of third party information from public records, information aggregators and even competitors for marketing has become a major facilitator of our retail economy. Even [Federal Reserve] Chairman [Alan] Greenspan suggested here some time ago that it's something on the order of the life blood, the free flow of information.[8]

46. Individuals rightfully place a high value not only on their PII, but also on the privacy of that data. Researchers have already begun to shed light on how much individuals value their data privacy—and the amount is considerable.

47. Notably, one study on website privacy determined that U.S. consumers valued the restriction of improper access to their personal information—the very injury at issue here—between $11.33 and $16.58 per website.[9] The study also determined that "[a]mong U.S. subjects, protection against errors, improper access, and secondary use of personal information is worth US$30.49 – 44.62."[10] This study was done in 2002. The sea-change in how pervasive the Internet is in everyday lives since then indicates that these values—when associated with the loss of PII to bad actors—would be exponentially higher today.

---

[8] FEDERAL TRADE COMMISSION, *The Information Marketplace: Merging and Exchanging Consumer Data*, transcript, p. 8, *available* at http://www.ftc.gov/news-events/events-calendar/2001/03/information-marketplace-merging-exchanging-consumer-data (last visited Sept. 20. 2022).

[9] Hann, Hui, *et al*, The Value of Online Information Privacy: Evidence from the USA and Singapore, at p. 17. Oct. 2002, available at https://www.comp.nus. edu.sg/~ipng/research/privacy. pdf (last visited Sept. 20. 2022).

[10] *Id.*

48.     Identity thieves may commit various types of crimes such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, and/or using the victim's information to obtain a fraudulent tax refund or fraudulent unemployment benefits. The United States government and privacy experts acknowledge that it may take years for identity theft to come to light and be detected.

49.     To date, Defendant has not offered Plaintiffs and Class members any compensation or relief as a result of the Data Breach.

50.     The information Defendant allowed to be compromised and taken is of such that the harms to Plaintiffs and the Class will continue to grow, and Plaintiffs and Class members will continue to be at substantial risk for further imminent and future harm.

### *Damages from Data Breaches*

51.     According to Javelin Strategy & Research, in 2017 alone over 16.7 million individuals were affected by identity theft, causing $16.8 billion to be stolen.

52.     Consumers place a high value not only on their personal information, but also on the privacy of that data. This is because identity theft causes "significant negative financial impact on victims" as well as severe distress and other strong emotions and physical reactions.

53.     The United States Government Accountability Office explains that "[t]he term 'identity theft' is broad and encompasses many types of criminal activities, including fraud on existing accounts—such as unauthorized use of a stolen credit card number—or fraudulent creation of new accounts—such as using stolen data to open a credit card account in someone else's name." *See In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018). The GAO Report notes that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."

54.     The FTC recommends that identity theft victims take several steps to protect their personal information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports often, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.

55.     Identity thieves use stolen personal information for "various types of criminal activities, such as when personal and financial is used to commit fraud or other crimes," including "credit card fraud, phone or utilities fraud, bank fraud and government fraud." *In re Zappos.com, Inc.*, 888 F.3d at 1024. The information exfiltrated in the Data Breach can also be used to commit identity theft by placing Plaintiffs and Class members at a higher risk of "phishing," "vishing," "smishing," and "pharming," which are which are ways for hackers to exploit information they already have to get even more personally identifying information through unsolicited email, text messages, and telephone calls purportedly from a legitimate company requesting personal, financial, and/or login credentials.

56.     There may be a time lag between when harm occurs versus when it is discovered, and also between when personal information is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

> *See* GAO Report, at p. 29.

57.     Personal information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber

14

blackmarket" for years.

58.    Thus, there is a strong probability that entire batches of stolen information have been dumped on the black market, or are yet to be dumped on the black market, meaning Plaintiffs and Class members are at an increased risk of fraud and identity theft for many years into the future.

59.    Data breaches are preventable. As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions." She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."

60.    "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures. . . . Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a data breach never occurs."

61.    Indeed, here Defendant took actions to secure the affected systems after the Data Breach, but should have implemented those actions previously to prevent the Data Breach.

62.    The types of information Defendant acknowledges were stolen by the criminals are sufficiently sensitive and valuable to identity thieves and criminals in perpetrating identity crimes. This information can be used to perpetrate scams, victimize the persons who own the information, and commit identity theft and fraud. With a person's name, address and birth date in hand, scammers may be able to buy the person's Social Security number on websites that normally sell

them to businesses conducting background checks.[11] If they cannot, just by knowing your birth date and hometown, scammers can often guess most, if not all, the digits of your Social Security number.[12]

63.     Criminals can use PII to devise and employ phishing and social engineering schemes capitalizing on the genuine information stolen from Defendant to send fraudulent mail and other communications to Plaintiffs and Class members that look authentic, but which are designed to lure them into paying money or providing other information that the criminals can use to steal money.

**Plaintiffs Received Defendant's Data Breach Notification Letter**

64.     In or about April 2019, Plaintiff Ringling purchased two Samsung mobile phones from a Boost Mobile store. Her phones were registered with Samsung by Boost Mobile using her personal information.

65.     On September 2, 2022, Plaintiff Ringling received an email from Samsung notifying her of the Data Breach. *See* Exhibit 1. Plaintiff Ringling has Experian credit monitoring. Due to the Data Breach, Plaintiff Ringling plans to renew her Experian credit monitoring.

66.     On or about December 2016, Plaintiff Newbery purchased a Samsung mobile phone from a Verizon store. His phone was registered with Samsung by Verizon using his personal information.

67.     On September 2, 2022, Plaintiff Newbery received an email from Samsung notifying him of the Data Breach. *See* Exhibit 1. Prior to receiving the Data Breach Notice, Plaintiff Newbery subscribed to a Silver membership with DebtCleanse on a month-to-month basis. After

---

[11] *See* https://www.aarp.org/money/scams-fraud/info-2014/protect-these-numbers-from-scammers.html (last visited Sept. 21, 2022).
[12] *Id.*

receiving the Data Breach Notice, Plaintiff Newbery upgraded his DebtCleanse monthly membership to a Gold membership to add Identity Theft Protection and Dark Web Monitoring. Plaintiff Newbery plans on renewing his DebtCleanse Gold membership due to the Data Breach.

68.     Plaintiffs and Class members provided Defendant with significant personal information, including their name, contact and demographic information, date of birth, and product registration information.

69.     Defendant has admitted that this information relating to Plaintiffs and Class members was exposed, compromised, accessed, acquired without authorization, and stolen in the Data Breach by criminals.

70.     On or about September 2, 2022, Defendant sent the Data Breach Notice by email notifying Plaintiffs and Class members that PII—including their name, contact and demographic information, date of birth, and product registration information—was taken by an "unauthorized third party" in the Data Breach. *See* Exhibit 1.

### *Plaintiffs' and Class Members' Damages*

71.     As a direct and proximate result of Defendant's conduct, Plaintiffs and Class members have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

72.     Plaintiffs and Class members have or will suffer actual injury as a direct result of the Data Breach including:

a)     Spending time reviewing charges for any fraudulent charges and remedying any fraudulent charges found;

b)     Purchasing credit monitoring and identity theft prevention;

c)     Requesting and reviewing their credit reports;

d)     Time and money addressing and remedying identity theft;

e) Spending time placing "freezes" and "alerts" with credit reporting agencies and, subsequently, temporarily lifting a security freeze on a credit report, or removing a security freeze from a credit report;

f) Spending time on the phone with or visiting financial institutions to dispute fraudulent charges;

g) Contacting their financial institutions and closing or modifying financial accounts compromised as a result of the Data Breach; and

h) Closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

73. Moreover, Plaintiffs and the Class members have an interest in ensuring that their personal information is protected from further breaches by the implementation of security measures and safeguards, including making sure that the storage of data containing their personal information is secure.

74. As a direct and proximate result of Defendant's actions and inactions, Plaintiffs and Class members have suffered anxiety, emotional distress, and loss of privacy.

75. As a direct and proximate result of Defendant's actions and inactions, Plaintiffs and Class members are at an increased and immediate risk of future harm, including from identity theft and fraud.

76. As a result of the Data Breach, Plaintiffs and Class members are at an imminent risk of identity theft and fraud. This risk will continue to exist for years to come, as Plaintiffs and Class members must spend their time being extra vigilant, due to Defendant's failures, to try to prevent being victimized for the rest of their lives.

77. Because Defendant presented such an easy target to cyber criminals, Plaintiffs and Class members have already been subjected to violations of their privacy, and have been exposed to a heightened and imminent risk of fraud and identity theft. Plaintiffs and Class members must now and in the future, spend time to more closely monitor their affected PII to guard against identity theft and other fraud.

78.     Plaintiffs and Class members may also incur out-of-pocket costs for, among other things, purchasing credit monitoring services or other protective measures to deter and detect identity theft.

## CLASS ACTION ALLEGATIONS

79.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23 on behalf of a class of similarly situated individuals (the "Class") defined as follows:

> All individuals in the United States whose personally identifiable information was accessed in the Data Breach announced by Samsung.

80.     Excluded from the Class are Defendant; any entity in which Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by Defendant; and the affiliates, legal representatives, attorneys, heirs, predecessors, successors, and assigns of Defendant. Also excluded are the judges and court personnel in this case and any members of their immediate families.

81.     Plaintiffs reserve the right to modify and/or amend the Class definition, including but not limited to creating subclasses, as necessary.

82.     *Numerosity*. The Class is so numerous that joinder of all members is impracticable. The identities of all Class members are ascertainable through Defendant's records.

83.     *Commonality*. There are numerous questions of law and fact common to Plaintiffs and the Class, including the following:

- Whether and to what extent Defendant had a duty to protect the PII of Plaintiffs and Class members;

- Whether Defendant had a duty not to disclose the PII of Plaintiffs and Class members to unauthorized third parties;

- Whether Defendant had a duty not to use the PII of Plaintiffs and Class members for non-business purposes;

- Whether Defendant failed to adequately safeguard the PII of Plaintiffs and

Class members;

- When Defendant actually learned of the Data Breach;

- Whether Defendant adequately, promptly, and accurately informed Plaintiffs and Class members that their PII had been compromised;

- Whether Defendant violated the law by failing to promptly notify Plaintiffs and Class members that their PII had been compromised;

- Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

- Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

- Whether Plaintiffs and Class members are entitled to actual damages, nominal damages, and/or exemplary damages as a result of Defendant's wrongful conduct;

- Whether Plaintiffs and Class members are entitled to restitution as a result of Defendant's wrongful conduct; and

- Whether Plaintiffs and Class members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

84. *Typicality*. Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like all Class members, had their PII compromised, breached and stolen in the Data Breach. Plaintiffs and Class members were injured through Defendant's uniform misconduct described in this Complaint and assert the same claims for relief.

85. *Adequacy*. Plaintiffs and their counsel will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel who are experienced in class actions and complex litigation, including data privacy litigation of this kind. Plaintiffs have no interests that are antagonistic to, or in conflict with, the interests of other members of the Class.

86. *Predominance*. The questions of law and fact common to Class members predominate over any questions which may affect only individual members.

87. *Superiority*. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Moreover, absent a class action, most Class members would find the cost of litigating their claims prohibitively high and would therefore have no effective remedy, so that in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go unremedied without certification of the Class. Plaintiffs and Class members have been harmed by Defendant's wrongful conduct and/or action.

88. Litigating this action as a class action will reduce the possibility of repetitious litigation relating to Defendant's conduct and/or inaction. No difficulties would be encountered in this litigation that would preclude its maintenance as a class action.

89. Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3), because the above common questions of law or fact predominate over any questions affecting individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

90. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2), because Defendant has acted or refused to act on grounds that apply generally to the Class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

## COUNT I
### Negligence
### *(On behalf of Plaintiffs and the Class)*

91. Plaintiffs repeat and reallege the allegations of the paragraphs 1-90 with the same force and effect as though fully set forth herein.

92.     Defendant's actions and inactions were of the type that would result in foreseeable, unreasonable risk of harm to Plaintiffs and Class members. Defendant knew, or should have known, of the risks inherent in collecting and storing the personal information of Plaintiffs and Class members and the importance of adequate security in storing the information. Additionally, Defendant is aware of numerous, well-publicized data breaches that exposed the personal information of individuals.

93.     This is the second data breach on Defendant's systems this year alone. Lapsus$ hackers stole source code and confidential internal documents from Defendant's systems in March 2022. Defendant failed to implement reasonable security measures to prevent the Data Breach that occurred a few months later.

94.     Defendant had a common law duty to prevent foreseeable harm to Plaintiffs' and Class members' PII. This duty existed because Plaintiffs and Class members were the foreseeable and probable victims of the failure of Defendant to adopt, implement, and maintain reasonable security measures so that Plaintiffs' and Class members' personal information would not be unsecured and accessible by unauthorized persons.

95.     Defendant had a special relationship with Plaintiffs and Class members. Defendant was entrusted with Plaintiffs' and Class members' personal information, and Defendant was in a position to protect the personal information from unauthorized access.

96.     The duties of Defendant also arose under section 5 of the FTC Act, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect individuals' personal information by companies. Various FTC publications and data security breach orders further form the basis of the duties of Defendant.

97.     Defendant had a duty to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Plaintiffs' and Class members' personal information in its possession so that the personal information would not come within the possession, access, or control of unauthorized persons.

98.     More specifically, the duties of Defendant included, among other things, the following duties, and Defendant carelessly and negligently acted or failed to act in one or more of the following ways:

      a.    Failing to conduct proper and reasonable due diligence over its data security systems, practices, and procedures;

      b.    Failing to adopt, implement, and maintain adequate security measures for protecting an individual's personal information to ensure that the information is not accessible online by unauthorized persons;

      c.    Failing to adopt, implement, and maintain adequate security measures for deleting or destroying personal information when Defendant's business needs no longer required such information to be stored and maintained; and

      d.    Failing to adopt, implement, and maintain processes to quickly detect a data breach and to promptly act on warnings about data breaches, and notify affected persons without unreasonable delay.

99.     Defendant breached the foregoing duties to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting personal information in its possession so that the information would not come within the possession, access, or control of unauthorized persons.

100.     Defendant acted with reckless disregard for the security of the personal information of Plaintiffs and Class members because Defendant knew or should have known that its data security was not adequate to safeguard the personal information that was collected and stored.

101.     Defendant acted with reckless disregard for the rights of Plaintiffs and the Class members by failing to promptly detect the Data Breach, and further, by failing to notify Plaintiffs

and the Class members of the Data Breach in the most expedient time possible and without unreasonable delay pursuant to common law duties to provide reasonably timely and truthful data-breach notification, so that Plaintiffs and Class members could promptly take measures to protect themselves from the consequences of the unauthorized access to the personal information compromised in the Data Breach.

102.     As a result of the conduct of Defendant, Plaintiffs and Class members have suffered and will continue to suffer foreseeable harm. Plaintiffs and Class members have suffered actual damages including, but not limited to, imminent risk of identity theft; expenses and/or time spent on credit monitoring for a period of years; scrutinizing bank statements, credit card statements, and credit reports; time spent initiating fraud alerts and credit freezes and subsequently temporarily lifting credit freezes; and increased risk of future harm. Further, Plaintiffs and Class members have suffered and will continue to suffer other forms of injury and/or harm including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

**COUNT II**
**Negligence Per Se**
***(On Behalf of Plaintiffs and the Class)***

103.     Plaintiffs repeat and reallege the allegations of paragraphs 1-90 with the same force and effect as though fully set forth herein.

104.     "Section 5 of the FTC Act [15 U.S.C. § 45] is a statute that creates enforceable duties, and this duty is ascertainable as it relates to data breach cases based on the text of the statute and a body of precedent interpreting the statute and applying it to the data beach context." *In re Capital One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 407 (E.D. Va. 2020). "For example, in *F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 240 (3d Cir. 2015), the United States Court of Appeals for the Third Circuit affirmed the FTC's enforcement of Section 5 of the

FTC Act in data breach cases." *Capital One Data Security Breach Litigation*, 488 F. Supp. 3d at 407.

107.    Plaintiffs' and Class members' PII was and is nonpublic personal information and customer information.

106.    Plaintiffs and Class members are in the group of persons the FTC Act was enacted and implemented to protect, and the harms they suffered in the Data Breach as a result of Defendant's violations of the FTC Act were the types of harm they were designed to prevent.

107.    As a result of the conduct of Defendant that violated the FTC Act, Plaintiffs and Class members have suffered and will continue to suffer foreseeable harm. Plaintiffs and Class members have suffered actual damages including, but not limited to, imminent risk of identity theft; expenses and/or time spent on credit monitoring for a period of years; scrutinizing bank statements, credit card statements, and credit reports; time spent initiating fraud alerts and credit freezes and subsequently temporarily lifting credit freezes; and increased risk of future harm. Further, Plaintiffs and Class members have suffered and will continue to suffer other forms of injury and/or harm including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

## COUNT III
### Breach of Implied Contract
#### *(On Behalf of Plaintiffs and the Class)*

108.    Plaintiffs repeat and reallege the allegations of paragraphs 1-90 with the same force and effect as though fully set forth herein.

109.    Defendant acquired and maintained the PII of Plaintiffs and Class members.

110.    At the time Defendant acquired the PII of Plaintiffs and Class members, there was a meeting of the minds and a mutual understanding that Defendant would safeguard the PII using

reasonable security measures and not take unjustified risks when collecting, digitizing, and storing the PII.

111. Plaintiffs and Class members would not have entrusted their PII to Defendant had they known that Defendant would make the PII vulnerable and fail to take reasonable precautions, such as encrypting the data while in storage, and deleting PII that was no longer necessary.

112. Defendant promised to comply with industry standards and to ensure that Plaintiffs' and Class members' PII would remain protected.

113. Implicit in the agreements between Plaintiffs and Class members and Defendant to provide PII was Defendant's obligation to:

    a.    Use the PII for business purposes only;

    b.    Take reasonable steps to protect and safeguard the PII from known and foreseeable risks;

    c.    Prevent unauthorized disclosures of the PII;

    d.    Provide Plaintiffs and Class members with prompt and sufficient notice of instances where unauthorized access to the PII is reasonably suspected; and

    e.    Reasonably safeguard and protect the PII of Plaintiffs and Class members from unauthorized disclosures or uses.

114. In collecting and maintaining the PII of Plaintiffs and Class members and publishing and disseminating privacy notices, Defendant entered into contracts to protect and keep security over the PII of Plaintiffs and Class members.

115. Plaintiffs and Class members fully performed under their contract with Defendant.

116. Defendant breached the contracts by failing to protect and keep private the personal information of Plaintiffs and Class members, including by failing to: (i) encrypt or tokenize the

sensitive PII of Plaintiffs and Class members, (ii) delete such PII that Defendant no longer had reason to maintain, (iii) eliminate the potential accessibility of the PII from the Internet where such accessibility was not justified, and (iv) otherwise review and improve the security of the network system that contained such PII.

117.    Defendant also breached a duty to provide reasonably expedient and sufficient notification of the Data Breach.

118.    As a result of Defendant's breach of implied contract, Plaintiffs and Class members have suffered and will continue to suffer foreseeable harm. Plaintiffs and Class members have suffered actual damages including, but not limited to, imminent risk of identity theft; expenses and/or time spent on credit monitoring for a period of years; scrutinizing bank statements, credit card statements, and credit reports; time spent initiating fraud alerts and credit freezes and subsequently temporarily lifting credit freezes; and increased risk of future harm. Further, Plaintiffs and Class members have suffered and will continue to suffer other forms of injury and/or harm including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiffs, individually and on behalf of the Class, request that the Court:

A.    Certify this case as a class action on behalf of the Class defined above, appoint Plaintiffs as the Class representatives, and appoint the undersigned counsel as Class counsel;

B.    Award declaratory, injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and Class members;

C.    Award restitution and damages to Plaintiffs and Class members in an amount to be determined at trial;

D.    Award Plaintiffs and Class members their reasonable litigation expenses and attorneys' fees to the extent allowed by law;

E.  Award Plaintiffs and Class members pre- and post-judgment interest, to the extent allowable; and

F.  Award such other and further relief as equity and justice may require.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Plaintiffs Jorge Newbery and Holly Ringling, individually and on behalf of all others similarly situated,

By: */s/ Thomas A. Zimmerman, Jr.*
     Thomas A. Zimmerman, Jr. (IL #6231944)
     Sharon A. Harris (IL #6255704)
     **Zimmerman Law Offices, P.C.**
     77 W. Washington Street, Suite 1220
     Chicago, Illinois 60602
     Telephone: (312) 440-0020
     *www.attorneyzim.com*
     Email: *firm@attorneyzim.com*

     Marc E. Dann (OH #0039425)
     Brian D. Flick (OH #0081605)
     **DannLaw**
     15000 Madison Avenue
     Lakewood, OH 44107
     Telephone: (216) 373-0539
     Email: *notices@dannlaw.com*

Counsel for Plaintiffs and the Class

28

Date: Fri, Sep 2, 2022 at 12:20 PM
Subject: An important notice regarding customer information
To:

# SAMSUNG

Dear Valued Customer,

At Samsung, security is a top priority. We are reaching out to inform you that Samsung recently discovered a cybersecurity incident that affected some of your information.

In late July 2022, an unauthorized third party acquired information from some of Samsung's U.S. systems. On or around August 4, 2022, we determined through our ongoing investigation that personal information of certain customers was affected.

We have taken actions to secure the affected systems, and have engaged a leading outside cybersecurity firm and are coordinating with law enforcement. We want to assure our customers that the issue did not impact Social Security numbers or credit and debit card numbers, but in some cases, may have affected information such as name, contact and demographic information, date of birth, and product registration information. The information affected for each relevant customer may vary.

At Samsung, we value the trust our customers place in our products and services - trust that we have built up over many years. By working with industry - leading experts, we will further enhance the security of our systems - and your personal information - and work to maintain the trust you have put into the Samsung brand for more than 40 years.

We regret any inconvenience this may cause you and appreciate your trust in us. We have set up an FAQ page on our website for additional questions and answers along with recommended actions.

If you'd like to check your credit report, you are entitled under U.S. law to one free credit report annually from each of the three major nationwide credit reporting agencies. More information can be found below.

If you have any questions regarding this issue, please visit our website at **www.samsung.com/us/support/securityresponsecenter**.

---

**EXHIBIT 1**

To order your free credit report, visit **www.annualcreditreport.com** or call toll-free at 1 877 322 8228.

| | | | |
|---|---|---|---|
| Equifax | Equifax Information Services LLC P.O.Box 740241 Atlanta, GA 30374 | 1-800-525-6285 | www.equifax,com |
| Experian | Experian Inc. P.O.Box 9554 Allen, TX 75013 | 1-888-397-3742 | www.experian.com |
| TransUnion | TransUnion LLC P.O.Box 2000 Chester, PA 19016 | 1-800-680-7289 | www.transUnion.com |

Samsung Electronics America, Inc.
85 Challenger Road
Ridgefield Park, NJ 07660